**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
 JANE DOE,

                             Plaintiff,

    -against-


 QBE INVESTMENTS (NORTH AMERICA) INC.,
 QBE INSURANCE GROUP LIMITED,
 VICTOR SANTOS, individually, LOURDES MENDEZ,
 individually, and DAMIR PAJESTOVIC, individually,

                       Defendants.
---------------------------------------------------------X

Civil Case No:

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff JANE DOE by and through her attorneys DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants QBE INVESTMENTS (NORTH AMERICA) INC., QBE INSURANCE GROUP LIMITED, VICTOR SANTOS, LOURDES MENDEZ, and DAMIR PAJESTOVIC (collectively referred to as "Defendants,") upon information and belief as follows:

## NATURE OF CASE

Plaintiff, JANE DOE complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367, seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination, hostile work environment, retaliation, and constructive termination by Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. Around May 11, 2018, Plaintiff JANE DOE submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2018-04736.

4. Around September 14, 2018, Plaintiff JANE DOE received a Right to Sue Letter from the EEOC for federal charge number 520-2018-04736.

5. Plaintiff satisfied all administrative prerequisites and is filing this case within the applicable Statute of Limitations.

6. Venue is proper in this court, as the events giving rise to this action arose in New York County, within the Southern District of New York.

## PARTIES

7. At all times material, Plaintiff JANE DOE ("Plaintiff" or "DOE") was and is an individual female who is a resident of the State of New Jersey, Hunterdon County.

8. At all times material, Defendant QBE INVESTMENTS (NORTH AMERICA) INC. (hereinafter referred to as "QBE North America") was and is a foreign business corporation duly existing by the virtue and laws of the State of New York that does business in the State of New York.

9.  At all times material, Defendant QBE INSURANCE GROUP LIMITED (hereinafter referred to as "QBE Insurance") was and is an international corporation that does business in the State of New York through QBE North America, its North American division.

10. At all times material, QBE Insurance owns and operates QBE North America.

11. At all times material, Defendants QBE Insurance and QBE North America were joint employers of Plaintiff.

12. At all times material, Victor Santos (hereinafter referred to as "Santos" or "AVP Santos") was and is an Assistant Vice President at QBE North America. Santos held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Santos held the power to hire and fire Plaintiff.

13. At all times material, Lourdes Mendez (hereinafter referred to as "Mendez") was and is a Vice President at QBE North America. Mendez held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Mendez held the power to hire and fire Plaintiff.

14. At all times material, Damir Pajestovic (hereinafter referred to as "Pajestovic") was and is an Assistant Vice President at QBE North America. Pajestovic held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Pajestovic held the power to hire and fire Plaintiff.

## **STATEMENT OF FACT**

15. Around April of 2016, Defendants hired Plaintiff as an Internal Auditor working out of their New York City office location.

16. Around November 12, 2017, Defendants sent Plaintiff to Bermuda to work on an audit with Defendants' AVP Santos.

17. After arriving in Bermuda, Defendants' AVP Santos consistently failed to correct people that

incorrectly assumed he and Plaintiff were a romantic couple. Plaintiff was extremely uncomfortable by Santos's actions.

18. After checking into the Princess Hamilton Hotel, Defendants' AVP Santos suggested that he and Plaintiff head to the beach.

19. After they went to the beach, Defendants' AVP Santos told Plaintiff that he would not have suggested they go to the beach if he had come with a male employee.

20. That evening, Defendants' AVP Santos and Plaintiff ate dinner together. Afterwards, Defendants' AVP Santos insisted that Plaintiff and he share a glass of wine in his hotel room. Plaintiff reluctantly complied.

21. While in Defendants' AVP Santos' room, Santos told Plaintiff that he thought she was beautiful. Plaintiff remained silent. Santos then proceeded to pull Plaintiff's left arm. Santos grabbed Plaintiff's arm over an open wound. Santos then kissed Plaintiff's wound. Santos then told Plaintiff, among other things, "I DON'T WANT YOU TO BE HURT ANYMORE, I WANT YOU TO FEEL SPECIAL...YOU'RE SO BEAUTIFUL," "I WANT YOU TO FEEL GOOD."

22. Defendants' AVP Santos then kissed Plaintiff's arm again.

23. Plaintiff asked Defendants' AVP Santos what he was doing. Santos did not respond. Plaintiff demanded that he stop kissing her and told Santos it was "not right."

24. Despite Plaintiff's protests, Defendants' AVP Santos continued to forcibly kiss Plaintiff's arm. Santos then began to forcibly kiss Plaintiff's neck, and eventually Plaintiff's lips. Plaintiff attempted to push Santos away. Santos continued to kiss Plaintiff.

25. Defendants' AVP Santos kept kissing Plaintiff, even as she made it unequivocally clear that the kisses and touching were unwanted stating, among other things, "YOU'RE MARRIED AND I'M MARRIED. THIS IS WRONG ON SO MANY LEVELS. YOU'RE MY BOSS! STOP!"

Plaintiff continued to try and physically push Santos away. Santos simply ignored Plaintiff's protests and told Plaintiff "I'M NOT YOUR BOSS, I'M YOUR COLLEAGUE."

26. Plaintiff finally broke away from Defendants' AVP Santos and stated, "I REALLY THINK I SHOULD GO." Plaintiff attempted to leave Santos's room. Santos then stood up and grabbed Plaintiff. Santos rubbed his body against Plaintiff's and continued to kiss her. Plaintiff continued to attempt to break away.

27. Defendants' AVP Santos asked Plaintiff if she would tell anyone at work about what happened.

28. Plaintiff was afraid, confused, and shocked by Defendants' AVP Santos's sexually aggressive behavior. Plaintiff was afraid that Santos would get angry and potentially become violent if she continued to push him away and rebuff his advances.

29. Defendants' AVP Santos pushed Plaintiff against the bed and started to forcibly kiss Plaintiff. Plaintiff begged Santos to stop kissing her before finally managing to break free from Santos's clutches.

30. After breaking free, Plaintiff ran out of the room.

31. Plaintiff returned to her room in complete shock and shame.

32. Around November 13, 2017, Defendants' AVP Santos requested Plaintiff come to a beach with him.

33. At the beach, Defendants' AVP Santos came behind Plaintiff and told her that she had an "AMAZING BODY." Santos then grabbed Plaintiff's hand and told Plaintiff that she was an amazing woman. Plaintiff immediately yanked her hand away.

34. Defendants' AVP Santos then again tried to kiss Plaintiff's cheek. Plaintiff turned her cheek and pulled away.

35. Eventually, Plaintiff had to leave the beach in order to escape Santos's sexual grasp.

36. That night, around 2:00 a.m., Plaintiff was alone in her room. Defendants' AVP Santos knocked on Plaintiff's door. Plaintiff answered and Santos asked Plaintiff what she was doing. Plaintiff responded that it was very late. Defendants' AVP Santos insisted on coming into Plaintiff's room to "hang out." Plaintiff responded that they both have work the next day and that she needed to sleep. However, Santos demanded that Plaintiff let him into her room.

37. Plaintiff eventually acquiesced and let Defendants' AVP Santos into the room, at which point, Santos sat next to Plaintiff and began to forcibly kiss Plaintiff's lips and neck again. Once again, Plaintiff told Santos, among other things, "YOU NEED TO STOP." Plaintiff stood up.

38. Defendants' AVP Santos then stood up, grabbed Plaintiff, pushed his erect penis up against Plaintiff's body, and began to forcibly grope Plaintiff's buttocks. Plaintiff felt scared, embarrassed, and helpless.

39. Plaintiff continued to protest Defendants' AVP Santos's sexual advances explaining that what he was doing was both unprofessional and immoral. Despite Plaintiff's desperate pleas, Santos continued to forcibly kiss Plaintiff on her arms, lips, and neck.

40. Eventually, Plaintiff told Defendants' AVP Santos that she needed to sleep and that he needed to leave her room. After Plaintiff desperately begged Santos to leave, he finally left Plaintiff's room.

41. Around November 14, 2017, Defendants' AVP Santos went to work as if nothing had happened. That evening, Defendants' AVP Santos demanded Plaintiff come to dinner with him.

42. In an effort to avoid another predatory sexual encounter, Plaintiff responded that she was just going to order room service. Defendants' AVP Santos was visibly upset and angrily responded to Plaintiff, "I SEE HOW IT IS…."

43. In order to avoid fighting with her supervisor, and risking her position, Plaintiff decided to join

Defendants' AVP Santos for dinner.

44. After dinner, Defendants' AVP Santos asked Plaintiff to "hang out" again in her room. Plaintiff told Santos that she was tired and that it was getting pretty late. Nonetheless, Santos adamantly insisted that he come inside Plaintiff's room in order to "speak" to Plaintiff.

45. Fearful for her job, Plaintiff reluctantly relented and let Defendants' AVP Santos into her room.

46. After a few minutes, Defendants' AVP Santos again started to forcibly kiss Plaintiff's lips and neck. Santos then took his shirt off and climbed on top of Plaintiff. Santos proceeded to forcibly kiss and vigorously grope Plaintiff all over her body. Santos then pulled up Plaintiff's dress, grabbed her right breast, and groped her vagina. Santos attempted to remove Plaintiff's underwear. All the while, Plaintiff begged Santos to stop, pleading, "PLEASE STOP, I CAN'T DO THIS."

47. Defendants' AVP Santos asked Plaintiff why she wanted him to stop and told Plaintiff that, "NO ONE WOULD FIND OUT."

48. Plaintiff pushed Defendants' AVP Santos away and begged him to get off of her. Plaintiff also reiterated to Santos that she did not want to engage in sexual intercourse with him. Plaintiff told Santos that they have work the next day and that they should both get some sleep.

49. Defendants' AVP Santos then sat in Plaintiff room and continued to ask Plaintiff, among other things, "WHY NOT [HAVE SEX]?" "WHY DON'T YOU WANT TO?" and "NO ONE WILL FIND OUT." Plaintiff continued to deny Santos's sexual advances.

50. Finally, Defendants' AVP Santos left.

51. Around November 15, 2017, Plaintiff woke up for work hoping that this nightmarish business trip would soon come to a close.

52. That same day, Plaintiff and Defendants' AVP Santos switched hotels to the Fairmont South

Hampton Hotel.

53. Around November 15, 2017, Defendants' employee Damir Pajestovic ("Pajestovic") reached out to Defendants' AVP Santos via e-mail and asked that Santos give Plaintiff an evaluation.

54. Later than evening, Defendants' AVP Santos asked Plaintiff for her new room number. Plaintiff refused to divulge her room number. Santos became visibly upset and insisted that Plaintiff share her room number stating, among other things, "WHAT, YOU DON'T WANT TO HANG OUT?" Plaintiff eventually gave in and shared her room number.

55. Later than evening, Santos entered Plaintiff's room and told Plaintiff, "I'M NOT GOING TO DO ANYTHING." Santos then sat next to Plaintiff on the bed. After a few minutes, Santos again began to forcibly kiss and climb on top of Plaintiff.

56. Once again, Plaintiff pleaded with Defendants' AVP Santos to stop sexually assaulting her. Plaintiff also told Santos that what he was doing was wrong because he is her boss and because they are both married. Santos tried to explain that he was just Plaintiff's "colleague" and that everything was alright. Plaintiff repeatedly begged Santos to get off of her. Santos eventually did and left Plaintiff's room.

57. Around November 16, 2017, Plaintiff desperately tried to focus on her work and return home as soon as possible. Plaintiff now feared that Defendants' AVP Santos would give her a negative review.

58. Later that evening, Plaintiff was alone in her room. Around 3:00 a.m., Defendants' AVP Santos began loudly knocking on Plaintiff's door.

59. Plaintiff opened her door slightly and told Defendants' AVP Santos that he needed to stop knocking and go back to his room. Santos demanded that Plaintiff let him in. Plaintiff relented.

60. Once inside, Plaintiff told Defendants' AVP Santos that she just wanted to go to bed. Thereafter,

Santos decided to leave.

61. Around November 17, 2017, Defendants' AVP Santos barely spoke with Plaintiff. All Santos told Plaintiff before they left the hotel was, "LET'S MAKE SURE WE GET OUR STORY STRAIGHT FOR WHEN WE GET BACK."

62. At the Bermuda airport, after Plaintiff checked in her baggage, Defendants' AVP Santos walked away and completely ignored Plaintiff.

63. After returning from Bermuda, Defendants' AVP Santos made a number of sexually suggestive comments to Plaintiff.

64. Specifically, around November of 2017, Defendants' AVP Santos told Plaintiff, "I LOVE YOUR DRESS, YOU LOOK LIKE A WRAPPED-UP PRESENT."

65. Around December of 2017, Defendants' AVP Santos told Plaintiff that she looked beautiful and that her smell "DRIVES [HIM] CRAZY."

66. Around December of 2017, Defendants' AVP Santos called Plaintiff to ask about a work-related issue. Plaintiff stated she was freezing with blankets on. Santos responded, "I'M JEALOUS OF YOUR BLANKETS, I WISH I WAS ONE OF YOUR BLANKETS."

67. Around December of 2017, Plaintiff reported to Defendants' AVP Damir Pajestovic that Defendants' AVP Santos was making sexually explicit comments that made her uncomfortable, such as Plaintiff looking like a "WRAPPED-UP PRESENT." In response, Pajestovic took no reasonable or immediate action to help combat the hostile work environment and sexual harassment. Instead, Pajestovic told Plaintiff to further complain to Defendants' Vice President Lourdes Mendez.

68. Around January of 2018, Plaintiff reported to Defendants' Vice President Mendez that Defendants' AVP Santos had stated that she looks like a wrapped-up present, among other

sexually suggestive comments. In response, Mendez told Plaintiff that Santos is "Hispanic" and makes those types of comments to her too.  Again no corrective action was taken.

69. Around January of 2018, Plaintiff saw Defendants AVP Santos and VP Mendez go out to lunch together repeatedly.

70. Around January of 2018, Defendants' Vice President Mendez told Plaintiff that she gave Santos a "warning."

71. Thereafter, Defendants' AVP Santos immediately began to retaliate against Plaintiff by, among other things: (i) deliberately failing to acknowledge Plaintiff at work; (ii) purposefully failing to include her on an audit report; (iii) excluding Plaintiff from important emails that Plaintiff needed to review as part of her job.

72. Around March of 2018, Defendants' Human Resources representative asked Plaintiff if she had been sexually harassed. Plaintiff began to cry and admitted that she had been brutally sexually harassed. Plaintiff told the Human Resources representative about possibly leaving work because she was so emotionally distraught regarding both what happened in Bermuda as well as Defendants' abysmal response to Plaintiff's hostile work environment complaint. However, the Human Resources representative took no reasonable or immediate action to help combat the hostile work environment.

73. Around March 28, 2018, Plaintiff called Defendants' sexual harassment hotline to make yet another complaint of workplace harassment. Plaintiff also spoke with Defendants' Employee Relations Representative Adam Rankin ("Rankin") in an attempt to further escalate her complaint.

74. Plaintiff reported to Defendants' Employee Relations Representative Rankin that she had been brutally sexually harassed and assaulted. Plaintiff told Rankin that "SERIOUS THINGS

HAPPENED," on a trip with a colleague to Bermuda and "A LOT MORE THAN JUST TALKING AND SAYING THINGS, THERE WAS A LOT OF TOUCHING INVOLVED." Plaintiff stated that, "SHE COULD NOT TAKE IT ANYMORE" and "REALLY NEED[ED] TO LEAVE."

75. Around March 30, 2018, Defendants constructively discharged Plaintiff by making her work environment so intolerable that she was forced to resign.

76. Around March 30, 2018, before leaving for the day, Defendants' Vice President Mendez took Plaintiff out to a final goodbye lunch. At that lunch, Plaintiff confided in Mendez and divulged exactly what had happened between her and Defendants' Assistant Vice President Santos in Bermuda.

77. Afterwards, Mendez told Plaintiff, "I WISH YOU HAD TOLD ME." Plaintiff then asked Mendez if she would investigate her sexual harassment complaint. Mendez responded that she would not investigate and that she could not do anything to help Plaintiff.

78. At the time Defendants constructively discharged Plaintiff, Plaintiff's annual salary was approximately $61,200 annually.

79. Defendants discriminated against and constructively discharged Plaintiff because of her sex and gender, and because she complained or opposed the unlawful conduct of Defendants related to the above protected classes.

80. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

81. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments including but not limited to extreme anxiety and severe depression.

82. As a result of Defendants' unlawful and discriminatory actions, Plaintiff became so physically and emotionally distressed that she is having difficulty eating and sleeping.

83. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

84. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to her professional reputation.

85. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

86. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants, jointly and severally.

87. The above are just some of the examples of the unlawful, discriminatory, and retaliatory conduct to which Defendants subjected Plaintiff.

88. Defendants' actions constituted a continuing violation of the applicable federal, state and city laws.

89. Plaintiff hereby demands reinstatement to her original position.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

91. Title VII states in relevant part as follows:

"(a) Employer practices:

It shall be an unlawful employment practice for an employer:

(1)     to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

92. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex and gender.

93. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's sex and gender.

94. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

**AS A SECOND CAUSE OF ACTION FOR
RETALIATION UNDER TITLE VII
(Not Against Individual Defendants)**

95. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

96. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by

this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

97. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

98. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

**AS A THIRD CAUSE OF ACTION
FOR DISCRIMINATION UNDER
NEW YORK STATE LAW
<u>(Against All Defendants)</u>**

99. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

100. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

101. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex/gender and by creating a hostile work environment.

102. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

**AS A FOURTH CAUSE OF ACTION**
**FOR AIDING & ABETTING UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

103. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

104. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

105. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

**AS AN FIFTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

106. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

107. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

108. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

109. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

110. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

111. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of her sex/gender.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

112. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

113. The New York City Administrative Code Tide 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…."

114. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(7) by discriminating against Plaintiff because of her opposition to the unlawful employment practices of Plaintiff's employer.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

115. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

116. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

117. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A NINTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

118. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

119. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or

enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

120. Defendants violated the above section as set forth herein.

## AS A TENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

121. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

122. Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

123. Defendants violated the above section as set forth herein.

## AS AN ELEVENTH CAUSE OF ACTION
## <u>FOR ASSAULT AND BATTERY</u>
## <u>(AGAINST DEFENDANT SANTOS)</u>

124. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

125. The aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendant SANTOS who did suddenly and without provocation, physically assault and batter Plaintiff, herein causing Plaintiff to sustain damages; in that Defendant SANTOS did conduct himself in a wanton, willful, reckless and heedless manner without regard to the safety of the Plaintiff herein; in that said Defendant was physically abusive; in behaving in a disorderly manner; in using unnecessary, excessive and unlawful touching against the plaintiff; in willfully and maliciously assaulting and battering the Plaintiff herein.

126. § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this

section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c.

127. As a result of Defendant SANTOS's acts of assault and battery, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A TWELFTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

128. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

129. Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

130. Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

131. Defendants caused Plaintiff to fear for Plaintiff's own safety.

132. Defendants' breach of their duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

133. As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

### AS A THIRTEENTH CAUSE OF ACTION
### FOR CONDUCT CONSTITUTING CRIMES UNDER PENAL LAW §130
### (AGAINST DEFENDANT SANTOS)

134. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

135. § 130.35 of the New York State Penal Law provides as follows: Rape in the first degree 1 A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3. Who is less than eleven years old; or 4. Who is less than thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.35.

136. § 130.50 of the New York State Penal Law provides as follows: Criminal sexual act in the first degree 1 A person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3. Who is less than eleven years old; or 4. Who is less than thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.50.

137. Section 130.70 of the New York State Penal Law; "Aggravated sexual abuse in the first degree" provides that "A person is guilty of aggravated sexual abuse in the first degree when he inserts a foreign object in the vagina, urethra, penis or rectum of another person causing physical injury to such person.

138. Defendant SANTOS violated the herein sections as set forth herein.

139. § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical,

psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c.

140. Defendant SANTOS violated the sections cited herein as set forth and Plaintiff suffered numerous damages as a result.


### AS A FOURTEENTH CAUSE OF ACTION
### FOR VIOLATING THE GENDER MOTIVATED VIOLENCE PROTECTION ACT
### (AGAINST DEFENDANT SANTOS)

141. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

142. N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against

property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

143. N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

144. N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

145. Defendant SANTOS's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

146. Defendant SANTOS violated the sections cited herein as set forth and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:  New York, New York
       November 2, 2018


**DEREK SMITH LAW GROUP, PLLC**


By:       **/s/ Daniel Altaras**

Daniel J. Altaras, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119
(212) 587-0760